American Eutectic Welding Alloys Sales Co., Inc.
*v.* Flynn, Appellant.

Argued April 29, 1960. Before JONES, C. J., BELL, JONES, COHEN, BOK and EAGEN, JJ.

*Earl Jay Gratz,* for appellant.

*Franklin Poul,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, June 3, 1960:

This appeal is from a decree granting a preliminary injunction to the plaintiff company for the purpose of preserving the status quo between it and the defendant, its former employee, pending determination of the defendant's alleged breach of a restrictive covenant in the written contract of employment entered into by the parties on or about March 20, 1959. The covenant in question was an engagement on the part of the defendant not to disclose confidential information, gained in his employment by the plaintiff, during or after such employment and not to compete with the plaintiff, after the termination of his employment, in the same territory to which he had been assigned by the plaintiff or within a radius of 100 miles thereof for a period of two years following the termination of his employment. The defendant employee tendered a letter of resignation to the plaintiff on February 3, 1960, to become effective two days prior to its date. Immediately, thereupon, he entered into the employ of a corporate competitor of the plaintiff company and at once went forth in the interest of his new employer to call on the trade and solicit customers for the sale of the same type of products as was handled by the plaintiff and in the same territory in which he had formerly represented the plaintiff.

As the chancellor viewed the plaintiff's undisputed averments and proofs, "The circumstances of the termination of defendant's employment with plaintiff [did] not reflect credit on the defendant or his new employer." Without detailing the intervening sequence of events

transpiring between the defendant and the national sales manager of his employer-to-be (the plaintiff's corporate competitor), it suffices to say that the chancellor was well justified in his observation that "One would have to be quite naive to avoid concluding that these events were not the culmination of a plan which had in it elements of economic piracy."

The defendant offered no evidence to controvert the plaintiff's case but confined himself to arguing that the court was without jurisdiction to pass upon the plaintiff's complaint since the written contract of employment contained a clause which provided that "Any controversy or claim arising out of or relating to this agreement, or breach thereof, shall be settled by arbitration in the Borough of Manhattan, City, County and State of New York, by and in accordance with the Rules of the American Arbitration Association. Judgment on the award rendered by the Arbitrator(s) may be entered in the Supreme Court of the State of New York, County of New York, or in any court having jurisdiction thereof." The contract also contained the further provision that "This agreement shall be deemed to be made under and shall be governed by the laws of the State of New York in all respects, including matters of construction, validity and performance."

As the court en banc apprehended, the preliminary objections, which the defendant filed to the complaint, rested entirely on the proposition that, since the parties have in their contract agreed to submit any dispute to arbitration and have agreed to be bound by New York law, the plaintiff company was precluded from obtaining the equitable relief which it sought locally. The court below expressed its difference with the defendant in respect of the fundamental concept of the nature of the relief which is available by recourse to arbitration and that which can be afforded by a court

sitting in equity, saying, in this connection, "Arbitration concerns itself with remedies; equity looks to the protection of rights. It may be as counsel argues, that under New York law a board of arbitration has power to award specific performance, and that such an award will be enforced by judicial decree; but no case has been cited, and no situation suggested, in which arbitrators have had the power to grant temporary relief such as is required of a court of equity where imminent danger of irreparable harm appears to make it necessary to preserve rights from threatened invasion."

The court held that, on the basis of the record before it, "it appeared clear that the defendant was in flagrant violation of his covenant" and accordingly concluded that, "to prevent the possibility of further perpetration of wrong which might materially and irreparably damage the plaintiff's rights," the restraining order was warranted, the effect of which would be to grant a stay "until the entire controversy has been explored, either by submission to arbitration or by hearing in court, and in the meantime to prevent any further threatened invasion of plaintiff's rights." The court required, and the Welding Company duly posted, a $5,000 bond to secure the defendant against damages by reason of the restraining order.

The oft-repeated rule with respect to the narrowly restricted scope of review upon an appeal from the grant or refusal of a preliminary injunction was recently reiterated in *Rubin v. Bailey,* 398 Pa. 271, 274, 157 A. 2d 882, where we quoted from *Hoffman v. Howell,* 242 Pa. 112, 114, 88 A. 877, as follows: "Our established practice on appeals from the awarding or refusing of preliminary injunctions is not to consider the merits of the case, but only to determine whether under the facts presented in the common pleas there was reasonable ground for the action of the court."

See also *Aldrich v. Geahry,* 360 Pa. 376, 378, 61 A. 2d 843; *Annenberg v. Roberts,* 333 Pa. 203, 208, 2 A. 2d 612; *National Automobile Service, Inc. v. Barfod,* 288 Pa. 227, 135 A. 630.

In view of the above quoted rule and the record made in this case in the court below, nothing would remain for us to do but affirm the decree appealed from, were it not for a decision by the Supreme Court for the Tenth Judicial District of New York on May 3, 1960, which counsel for the present appellant has brought to our attention. See *Matter of Demchick (Am. Eutectic Welding Alloys Sales Co., Inc.),* New York Law Journal, Vol. 143, No. 85.

*Matter of Demchick* was instituted in Queen's County by a former employee of the American Eutectic Welding Alloys Sales Co., Inc., (a New York corporation having its principal office in Flushing) to obtain a stay of a pending proceeding in the Court of Common Pleas of Bucks County, Pennsylvania, wherein the Welding Company, as plaintiff, was seeking to restrain its former employee (Demchick) from violating the restrictive covenant in his contract of employment with the Welding Company. The New York Court, declaring that the arbitration clause in the contract governed, granted Demchick's application and entered an order purporting to stay the equity proceeding in Pennsylvania and directing the parties to proceed with arbitration of the dispute involved, in the manner provided in the contract between the parties.*

The New York Court did not, however, lay any restraint upon the alleged covenant violators, conditioned upon their being secured by proper bond against

---

* A similar order was contemporaneously entered by the New York Court in three companion cases, all involving former employees of the same defendant Welding Company. *Matter of Bechtel, Matter of Gold,* and *Matter of Meixell.*

damage thereby. In fact, the court confessed its lack of power to take such precautionary step in order to protect the Welding Company against the threatened irreparable harm. The court said in this connection, ". . . counsel [for the Welding Co.] indicated in his oral argument his willingness to arbitrate, but only after his client has obtained a preliminary injunction in Pennsylvania. . . . Such contention, however, overlooks the fact that arbitration is a *contractual* method of settling disputes. . . . When parties to a contract . . . agree to resolve any controversies thereunder by an arbitral tribunal, they agree 'to waive the rules of evidence and the inexorable application of substantive rights as well. This may not always be wise, but it is within the powers of the contracting parties, and it is the import and essence of an arbitration agreement.' [citations omitted] Merely because the respondent herein has applied for a temporary injunction in the Pennsylvania action is no reason for denying the application to restrain the prosecution of that action. This court's conclusion that the action must be stayed, in and of itself, precludes the provisional remedy (Simon v. Vogel, 9 App. Div. 2d 63)."

*Simon v. Vogel,* cited above, involved a suit for the specific performance of a partnership dissolution agreement and a motion for the appointment of a temporary receiver. The agreement contained an arbitration clause. The appellate court held that "[t]he arbitrators are empowered to grant specific performance." The opinion states, "Our conclusion that the action must be stayed, in and of itself, effectively precludes appointment of a receiver *pendente lite* in this action." The order appointing a receiver pendente lite was reversed.

It would also seem that the arbitrators may not impose a restraint upon a party to the arbitration prior

to a final award which, in the circumstances of this case, might prove to be inefficacious. In *Matter of Staklinski (Pyramid Elec. Co.)*, 6 N. Y. App. Div. 2d 565 (1958), where an employment contract with an arbitration clause was involved, the court said, "under clause 9 of the agreement the parties provided that any controversy, etc., should be settled by arbitration 'in accordance with the rules then obtaining of the American Arbitration Association.'

"Section 42 of such rules provides: 'The arbitrator *in his award* may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.'" (Emphasis supplied).

The order of the New York Court in the *Matter of Demchick* is, of course, incapable of ousting the jurisdiction of the Pennsylvania equity court, which acts *in personam* and which has jurisdiction of the parties to the suit here involved. True enough, they are bound by their contract to arbitrate in the Borough of Manhattan, New York, their differences arising under or out of the employment contract and no Pennsylvania court should presume to adjudicate such rights. But, unless the status quo be preserved, there may well be nothing left to arbitrate with any real effect, judging from the present state of the record in this case. We are, therefore, not disposed to interfere with the restraining order entered by the court below. This may prove to be a Pyrrhic victory for the plaintiff company in view of the decision in *Matter of Demchick*, since the plaintiff is a New York corporation and subject to that State's visitorial powers.

Order affirmed at appellant's costs.